49 N.J. Super. 1 (1958)
138 A.2d 759
DIANE SHEEHAN AND SUZANNE SHEEHAN, INFANTS, BY DANIEL SHEEHAN, GUARDIAN AD LITEM, AND DANIEL SHEEHAN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
JEROME McGOWAN AND RICHARD McGOWAN, DEFENDANTS, AND RICHARD J. TARRANT AND D.T.C. HOLDING CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1958.
Decided February 12, 1958.
*2 Before Judges CLAPP, JAYNE and SCHETTINO.
Mr. Roger Hinds argued the cause for appellants.
Mr. William Feinberg argued the cause for respondents (Mr. Jack Feinberg, attorney; Mr. Richard J. Feinberg, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
Although the distinction between an invitee and licensee conspicuously vanishes in this jurisdiction in its relation to the liability of the occupier of land, it remains unextinguished in measuring the care owed by the motorist to his passenger. Vide, Lippman v. Ostrum, *3 22 N.J. 14 (1956). Yet it is historically noticeable that the application of these divergent relationships between driver and passenger in the operation of automotive vehicles is derived from the law of real property. Despite the consanguinity, the sire now perishes and the offspring survives. Jesselson v. Moody, 309 N.Y. 148, 127 N.E.2d 921 (Ct. App. 1955).
And so, on the tilting ground of automobile litigation, the question of whether the injured passenger was an invitee or a licensee continues to plague attorneys, judges, and juries. An illustration is projected on the canvas of the present appeal.
The present action was occasioned by the occurrence on the night of November 15, 1953 of a collision at the intersection of 13th Avenue and 8th Street in the City of Newark, between an automobile owned by the defendant Jerome McGowan and operated by the defendant Richard McGowan, and one owned by the D.T.C. Holding Co., a corporation, and driven by the defendant Richard J. Tarrant.
The infant plaintiffs, Diane and Suzanne Sheehan, daughters of the plaintiff Daniel Sheehan, were passengers in the vehicle of the corporate defendant, which was being used by Tarrant for his personal purposes. The meager evidence introduced by the plaintiffs to establish the liability of the corporate owner under the principle of respondeat superior was manifestly inadequate, and it can be immediately announced that the dismissal by the court of the alleged cause of action against it was justified and is therefore affirmed.
The present appeal is mainly concentrated upon the propriety or impropriety of the involuntary dismissal of the plaintiffs' cause of action against the defendant Tarrant. At the conclusion of the introduction of the evidence, the trial judge stated:
"As the case now stands we have no evidence in the case on the part of plaintiff that there was an invitation, either express or implied, upon the part of Mr. Tarrant or upon the part of anyone acting for him."
*4 It may be fairly acknowledged that the evidence failed to disclose any invitation to ride expressly addressed by Tarrant to the infant plaintiffs, but whether the circumstances revealed by the evidence generated the reasonably logical implication of an equivalent overture proposes a very sharp question.
It is relevant to explain that the infant plaintiffs were born of the wedlock of Dr. Sheehan and his wife. The marriage was dissolved by divorce. His former wife married the defendant Richard Tarrant. The custody of the infant plaintiffs was awarded to Dr. Sheehan, in whose household they were residing at the time of the mishap.
During the evening preceding the collision, which occurred at about 12:30 A.M., the girls were attending with their mother a party at the home of their uncle and cousins. Their uncle had transported them to his home. For what reason was their stepfather returning them to the residence of their father?
At the trial Mr. Tarrant elucidated:
"Q. How was it that you came to have Diane in the car? A. Well, Mrs. Tarrant earlier in the evening had asked me would I stop by and take the children to the doctor's home.
Q. You said yes? A. I said I would stop by later on and take them home.
Q. There was no question in your mind that they were invitees? A. They were not invitees. I never at any time explicitly asked them. All I did was give them a ride in the car.
Q. They came along? A. They came along at Mrs. Tarrant's invitation or license from me. She said to me, `Will you take the children?' And I said `All right.'
Q. You invited Mrs. Tarrant, authorized Mrs. Tarrant to extend an invitation to them? A. I didn't authorize her to do anything. She asked me if I would take the children home.

* * * * * * * *
Q. You say that the child, either by implication or expressly, the child Diane or the child Suzanne were not invited to ride? A. I said she wasn't expressly or impliedly invited by me to ride in the car. She was not an invitee in my car. I said that very emphatically.
Q. Well, Mrs. Tarrant was authorized to invite her? A. She wasn't; she wasn't authorized to. I didn't authorize her to do anything. I didn't invite them to ride in my car.

* * * * * * * *
*5 Q. You are a member of the Bar? A. I am a member of the Bar, been so for the past thirty years."
Noticeably, Mr. Tarrant was in essence expressing his legal conclusions. Implications more effectively arise from the accompanying and surrounding facts and circumstances. So it is that whether a passenger is an invitee or merely a licensee is commonly a question of fact and as such, appropriately within the functional domain of the jury.
The author of this opinion has long retained the conviction that in correspondence to the early law applicable to the possessor of land, the criteria, inter alia, in determining the legal status of the invitee as distinguished from that of the licensee is the beneficial interest of the automobile driver in the object and purpose of transporting the passenger; hence the probable intent of the driver.
Hypothetical illustrations are that the merchant has a beneficial interest in the entrance of the customer upon his premises; in contrast, the motorist has none in accepting into his vehicle the hitch-hiker. The interest need not be of a monetary or commercial nature. The interest should, however, be of a character to tend to expose the intent. The affiliation of a personal interest in the object and purpose of the transportation of the passenger is certainly diagnostic of the driver's intent to invite.
The parent who conveys his own children without specific invitation to Sunday School does not thereby exhibit an intention to place them in the category of licensees, but perhaps so in transporting the children of his neighbor at the latter's request. While in the instant case the infants were not then members of Tarrant's household, they were children of his present wife. She was concerned about the means of returning them to their home. He was inevitably concerned with her wishes and the welfare of her children.
Divergent and contradictory inferences may often be reasonably drawn by fair-minded jurors from uncontroverted facts. So often do surrounding circumstances guide the mind to its conclusion. Vide, Myers v. Sauer, 116 N.J.L. 254 (E. & A. 1936); 117 N.J.L. 144 (E. & A. 1936); *6 cf. Knox v. Goodman, 45 N.J. Super. 428, 433 (App. Div. 1957), certification denied 25 N.J. 47 (1957).
We conclude that the inferential rationalization of the pertinent factual circumstances disclosed by the evidential information in the present case should have been delegated to the jury.
Accordingly, the dismissal of the plaintiffs' cause of action against the defendant Tarrant is reversed and a new trial directed. As previously announced, the dismissal of the plaintiffs' action against the D.T.C. Holding Co. is affirmed.